# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**RICHARD W. BRIANA, JR.,**                    Chapter 13
     Debtor                    Case No. 08-12770-RS

~~~~~~~~~~~~~~~~~~~~~~~~~~

## ORDER

Whereas, the Debtor filed a Chapter 13 petition on April 17, 2008; and

Whereas, on the same day, the Debtor filed Schedules, a Statement of Financial Affairs, a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income; and

Whereas, on Schedule A-Real Property and Schedule D-Creditors Holding Secured Claims, the Debtor listed interests in two properties owned as a tenant by the entirety with his non-debtor spouse: a single family home located at 63 High Street, Revere, Massachusetts (the "High Street property"), with a value of $350,000, subject to a mortgage held by Washington Mutual [sic] in the sum of $152,028; and a three-family home located at 17 Barrett Street, Revere, Massachusetts (the "Barrett Street property"), with a value of $350,000, subject to three mortgages in the following amounts:  $33,972, $10,436, and $152,664;[1]

---

[1] The Debtor did not disclose the priority of the mortgages on the Barrett Street property in his Schedules.  On Schedule D, he disclosed that Beal Bank Ssb [sic] assigned the two smaller mortgages to LPP Mortgage LTD.

1

Whereas, on May 5, 2008, MGC Mortgage, Inc. ("MGC"), as servicer for LPP Mortgage, Ltd. ("LPP"), filed two proofs of claim: one in the sum of $34,296.42 secured by a second mortgage on the Barrett Street property and the other in the sum of $70,030.74 secured by a third mortgage on the Barrett Street property; and

Whereas, on May 5, 2008, the Debtor filed a Chapter 13 Plan and amended Schedules I and J-Current Monthly Income and Expenditures of Individual Debtor(s); and

Whereas, pursuant to his Chapter 13 plan, the Debtor proposed to pay mortgage arrears totaling $21,510.00 to Beal Bank Ssb [sic] on account of a second mortgage on "17 Barre" [sic] and a third mortgage on "73 Bar"[sic]; and

Whereas, pursuant to his Chapter 13 plan, the Debtor also proposed to make regular monthly mortgage payments directly to Countrywide Home Lending on account of a first mortgage on the 17 Barrett Street property and to Washington Mutual on account of a first mortgage on the High Street property; and

Whereas, pursuant to his Chapter 13 plan, the Debtor further proposed a 0.05% dividend to holders of general unsecured claims in the sum of $85,251.42, as well as on account of the claims of Beal Bank Ssb [sic] in the sum of $19,480.42 and $63,336.74, totaling $82,817.16, as "undersecured claims arising after lien avoidance/cramdown;" and

Whereas, on June 2, 2008, LPP filed an Opposition to confirmation of the Debtor's Chapter 13 plan on the ground that the Debtor failed to provide for full payment of its two fully secured claims; and

Whereas, in support of its Opposition, it referenced its proofs of claim in the

2

amounts of $70,030.74 and $34,296.42, which total $104,327.16; and

Whereas, June 2, 2008, the Debtor objected to the proofs of claim filed by LPP, stating that MGC is the servicer for LPP; that on September 10, 2007, MGC obtained a judgment in the amount of $70,000 from the Suffolk Superior Court, Department of the Trial Court; that from November 15, 2007 through March 2008, the Debtor, through his counsel, attempted to negotiate a settlement with MGC; that MGC agreed to a settlement in principal, but that it proposed different settlement terms on April 16, 2008 which, according to the Debtor, were unfair and unreasonable; and that the proofs of claim filed by MGC on behalf of LPP are "outrageous and unfair and unreasonable;" and

Whereas, MGC, on behalf of LPP, filed a Response to the Debtor's Objection to its proofs of claim in which it averred that LPP's claims arose from loans originally granted by the Small Business Administration ("SBA") to the Debtor in connection with the Debtor's business that were secured by second and third mortgages on the 17 Barrett Street property, which, at the time, was in the name of Paul Chicarello, as Trustee of the 17 Barrett Street Realty Trust (the "Trust"); that the SBA granted the Debtor's request to discharge the mortgages to enable him to refinance the first mortgage on the 17 Barrett Street property; that "either by fraud or malfeasance, [the] Debtor conveyed the Property from the Trust to himself and his wife prior to recording the new Mortgage, which ran from the Trust to the SBA;" that, as a result, the mortgages were outside the chain of title and unenforceable against the Property; that on or about June 29, 2001 and July 17, 2001, the SBA assigned the loans to the LPP; that the Debtor defaulted in his payments in October of 2005; that LPP

3

commenced an action in the Suffolk Superior Court in December of 2006; that the Superior

Court entered an order reforming the mortgages on August 23, 2007 and awarded damages

to LPP in September of 2007; that the Debtor failed and refused to pay the debt to LPP; that

LPP scheduled a foreclosure sale for April 17, 2008; that, as of April 15, 2008, the Debtor

owed LPP a total of $93,328.34; and that there was no enforceable agreement between the

parties; and

Whereas, on September 4, 2008, the Court conducted a hearing on LPP's Objection

to confirmation of the Debtor's Chapter 13 plan and the Debtor's Objection to LPP's proofs

of claim; and

Whereas, at the hearing, Debtor's counsel represented that the Debtor would amend

his Chapter 13 plan after his Objection to the proofs of claim filed by MGC was resolved,

Now, therefore, the Court sustains the LPP's Objection to confirmation of the

Debtor's plan and overrules the Debtor's Objection to the proofs of claim filed by MGC on

behalf of LPP.

The Debtor's plan is unconfirmable as the Debtor cannot both cure arrears owed to

LPP and cramdown its fully secured claims.  There is no factual or legal justification for

cramdown of a fully secured claim.  *See* 11 U.S.C. §§ 506, 1325(a)(5).  With respect to the

Debtor's Objection to the proofs of claim filed by MGC, upon review of the exhibits

attached to the pleadings filed by both the Debtor and LPP, the Court finds that no valid

and binding settlement agreement existed between the Debtor and LPP.  Accordingly, the

Debtor's assertion that LPP's claim is limited to the amount of a purported settlement

4

agreement is without evidentiary support.

Pursuant to Fed. R. Bankr. P. 3001(f), "[a] proof of claim properly executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Pursuant to 11 U.S.C. § 502(a), "[a] claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." "The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence." In re Hemingway Transp., Inc., 993 F.2d 915, 925 (1st Cir.1993). The Debtor failed to support his Objection with substantial evidence. At most the Debtor established that the parties had reached the stage of "imperfect negotiation." They did not finalize a settlement of LPP's secured claims. See generally In re Harvey Probber, Inc., 50 B.R. 292, 296 (Bankr. D. Mass. 1985). Accordingly, LPP's proofs of claim were not deprived of their presumptive validity and LPP met its ultimate burden of persuasion.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: October 29, 2008
cc: Peter J. Martino, Jr., Esq., David W. Robinson, Esq., James C. Fox, Esq., Carolyn Bankowski, Esq.

5

6